MARY D. HORNER, Adm'x, &c. *vs.* HUGH M. COFFEY.

There is no provision in the act incorporating the town of Grand Gulf to authorize a resort to the individual property of the inhabitants of the town for the purpose of discharging a judgment against the corporation.

At common law, corporations, such as banks or insurance companies, do not attach any individual responsibility to their members for the corporate debts; but a different rule prevails (according to some authorities) with regard to the inhabitants of any district, as counties or towns incorporated by statute, which come under the head of *quasi* corporations. Against them no private action will lie, unless given by statute; and then each inhabitant is liable to satisfy the judgment.

The law will not make or presume a man to be a defendant to a suit against another, unless it be shown that he was a party to the cause of action. *Held*, that the inhabitants of Grand Gulf were not parties to the cause of action upon which the suit was brought.

The act incorporating the town requires the inhabitants to perform such obligations as the corporate authorities may legally impose upon them, and that was a tax provided for in the charter.

A failure to impose this tax, or a failure to pay it by the inhabitants of the town, does not make them liable for a judgment against the corporation.

A judgment is only the means provided by law to enable a creditor to get that to which he was entitled before judgment. *Held*, that a creditor of a corporation cannot maintain a suit against any one or all the inhabitants of the town, because they were liable to pay a tax, and had failed to pay it.

The act of incorporation gives no authority to make the citizens of the town parties to the cause of action, or to make their property liable for the judgment.

ON appeal from the southern district chancery court at Natchez; Hon. James M. Smiley, vice-chancellor.

The bill of complaint filed by the appellee in the court below avers, that the appellant's intestate, Alexander H. Horner, on the 6th of April, 1849, recovered judgment against "the president and selectmen of the town of Grand Gulf" for $750, which was revived after the death of said Alexander, in the name of appellant, as his administratrix.

That appellant has sued out execution upon said judgment; and, proceeding upon the false assumption that the property

Horner *v.* Coffey.

of the individual corporators, residing in said town of Grand Gulf, is liable to be sold for the payment of said judgment, has caused said execution to be levied on a lot of ground in said town, the property of appellee.,

That said lot is not the property of said corporation, but is proceeded against as the private property of appellee. That there is no provision in the charter of incorporation of the town of Grand Gulf that the private property of the members of the corporation shall be liable for the payment of its debts; and insists, that the attempt to subject the property of appellee to the payment of said judgment, is wholly unauthorized by law, and prays an injunction, &c.

The answer admits the judgment and levy upon the private property of appellee, a prior execution on said judgment having been returned "*nulla bona.*"

States that said president and selectmen are a municipal corporation, and possess no corporate property or funds out of which said debt can be collected by execution, though by their charter they have full power to assess and collect taxes upon the persons and property, within the limits of said town, to pay the debts and defray the expenses of the said corporation. That appellant several times applied to said president and selectmen to pay said judgment, or make provision therefor by taxation or otherwise; but they refused to pay or make any provision for said debt, and refused to authorize or direct the assessment and collection of any taxes for that or any other purpose.

*H. T. Ellett*, for appellant.

The only question in this cause is, whether the private property of the members of a municipal corporation is liable to execution on judgments against the corporation?

In regard to private corporations, which have a capital stock and a fund which may be subjected to the payment of their debts, the rule is settled in the negative. But as to municipal corporations, established for political and civil purposes, without any corporate fund, a clear distinction is drawn in the books, and for a very satisfactory reason.

Angell and Ames state the rule and the reason of it very clearly. They say : " A private corporation is distinguishable from a municipal corporate body by having a corporate fund from which a judgment can be satisfied, and by the irresponsibility of the members for the corporate debts beyond the amount of their interest in the fund; for towns, &c., being established only for political and civil purposes, each member of the same is liable, in his person and private estate, to the execution." Ang. & Ames on Corp. 1st edit. 23, 374 ; 3d edit. 32, 566.

The position is fully sustained by the following authorities : 3 Conn. R. 52; 6 Ib. 223; *Beardsley* v. *Smith*, 16 Ib. 368 ; *Merchants Bank* v. *Cook*, 4 Pick. 414; 10 Ib. 127; 13 Ib. 491; *Chase* v. *The Merrimack Bank*, 19 Ib. 564; *Commonwealth* v. *Blue Hill Turnpike*, 5 Mass. 422; 7 Ib. 187; 14 Ib. 216; 17 Ib. 333, which shows, (p. 335,) that the rule as to municipal corporations has been extended by the Mass. statute of 1808 to manufacturing corporations. *Adams* v. *The Wiscasset Bank*, 1 Greenl. 364.

Kent, in the 2d vol. of his Com. 3d edit., p. 274, lays down the same rule, and cites the cases from 4 Pick. 414; 1 Greenl. 361; 7 Mass. 187; and also *Russell* v. *Men of Devon*, 2 Term R. 667; and *Attorney-General* v. *Corporation of Exeter*, 2 Russ. 53, per Lord Eldon.

In *Harvey* v. *The East India Company*, 2 Vern. 396, it is said at the foot of the report: " *Note.* In the case between Dr. Salmon and the Hamborough Company, the members in their private persons were made liable, the company having no goods."

The cases of *Beardsley* v. *Smith*, 16 Conn., and *Chase* v. *Merrimack Bank*, are comparatively recent decisions, and are very full and clear in the assertion and vindication of the rule.

The principle is no novelty. It is found in approved text books, and in decisions of high authority; and if not more frequently to be met with, it is perhaps owing to the fact, that corporate bodies are not often to be found willing to evade the payment of their just debts, by a refusal to exercise their proper powers in making provision for their payment.

Horner *v.* Coffey.

*William S. Wilson,* for appellee.

The corporation of Grand Gulf, being a proper corporation aggregate with full powers as such, can the property of an individual corporator be taken for its debts?

Let the nature and properties of a corporation be regarded, and it will be at once seen that the appellant must fail in her attempt.

What is a corporation? Chancellor Kent (2 Com. 267) defines what it is: " A corporation is a franchise, possessed by one or more individuals, who subsist as a body politic under a special denomination, and are vested by the policy of the law with the capacity of perpetual succession, and of acting in several respects, however numerous the association, as a single individual."

" All the individuals composing a corporation, and their successors, are considered in law but as one moral person, capable, under an artificial form, of taking and conveying property, contracting debts," &c.

Again, at next page: " It was chiefly for the purpose of clothing bodies of men in succession, with the qualities and capacities of one single artificial and fictitious being, that corporations were originally invented," &c.

1 Black. Com. 467, after speaking of the difficulties of keeping property in the hands of a succession of natural persons, says: " But when they are consolidated and united into a corporation, they and their successors are then considered as one person in law," &c.

Again, at page 475, enumerating their powers and capacities, he says the second of their incidents is, " to sue and be sued, implead, &c., and do all other acts as natural persons may."

See also definitions, first page Angell & Ames, Corporations; and at second page, that of Chief Justice Marshall, ascribing to corporations " individuality, by which (with other properties) a perpetual succession of many persons are considered as the same, and may act as a single individual." " Again, a perpetual succession of individuals are capable of acting, &c., like one immortal being."

A corporation, then, is a being, a person formed by the con-

37 *

solidation and union into one, as Blackstone expresses it, of the various persons who compose it. Its existence is the aggregate of their several existences. In legal contemplation, it is just as distinct from the individual members, as the *tertium quid* in chemistry is different from either of the substances that combine for its formation.

" The debts of a corporation, either to or from it, are totally extinguished by its dissolution.; so that the members thereof cannot recover or be charged with them in their natural capacities, agreeable to that maxim of the civil law. ' What is due to the corporation is not due to the members, nor do the members owe what the corporation owes.' " 1 Black. Com. 484.

In accordance with this, in *President and Selectmen of Port Gibson* v. *Moore*, 13 S. &. M. 157, this court decided, that a debt due by the corporation of Port Gibson was extinguished by its dissolution, which could not well be if the inhabitants of the town severally were liable for the debt.

2 Term R. 672, Lord Kenyon, says: " Where an action is brought against a corporation for damages, those damages are not to be recovered against the corporators in their individual capacity, but out of their corporate estate."

In this case, Lord Kenyon draws the distinction very precisely between proper corporations with full powers as such, and *quasi* corporations; which latter, having no corporate estate, and no capacity to acquire any, are not liable to suit, unless an action be expressly given by statute. When such action is given, the individuals must make good a judgment out of their private estates. Not so, however, according to Lord Kenyon, in the case of proper corporations aggregate.

A failure to advert to this distinction, and some loose expressions in the text books, have, it is believed, led to the mistaken opinion, that in all cases the private property of the members of municipal corporations is liable for the payment of the corporation's debts.

This might be inferred from what is said by Ang. & Ames, Corp. 32.

*Beardsley* v. *Smith*, 16 Conn. 368, is relied on by appellant.

In that case the charter of Bridgeport provided, "that debts against the town might be enforced and collected in the same manner, and to the same extent, that debts lawfully contracted by towns in this State are enforced by existing laws."

Church, Judge, in his opinion, admits that the doctrine of the State is elsewhere regarded as "peculiar," and states that it was at an early day adopted in the colony; whether as part of the common law, or originating there, he does not deem it necessary to inquire.

He cites the Massachusetts cases as authorities, which, as has been shown, take the distinction between the two classes of corporations, towns being in that State *quasi* corporations. 7 Mass. 186.

This would also seem to be the case in Connecticut, for Church, J., admits; "That writs have always issued against the inhabitants of towns, societies, &c., as parties," not against them as a full corporation with a corporate name; just as in the case in 2 Term R., the suit was brought against "the men dwelling in the county of Devon."

But the argument is, that the private property of the members of municipal corporations is liable for their debts, because they have no corporate fund. Chief Justice Parsons gives as the true reason for such liability, in case of *quasi* corporations, that they have no fund, and no means of getting any; because they have no capacity to take as a corporation. But proper corporations aggregate "are supposed to have a corporate fund." 7 Mass. 186.

Being individuals capable of contracting, they are supposed to be able to fulfil their contracts, equally with natural persons.

Besides, the corporation of Grand Gulf is endowed with the power to purchase property, and to levy taxes to raise a corporate fund.

Upon the whole it is submitted, that no case can be found decided in England, or any State governed by the common law unmodified by local custom, which has recognized the right of a creditor of a proper corporation aggregate, to seize the property of the individual members for the payment of its debts.

*Attorney-General* v. *Corporation of Exeter*, 2 Russ. 53, has,

by some, been supposed to warrant such a proceeding. Lord Eldon, however, was very far from advancing any such doctrine.

His proposition was, that "if a fee farm rent was chargeable on the whole of the place called Exeter, he who was entitled to the rent might have demanded it from any one who had a part of, or in that city."

Mr. Justice FISHER delivered the opinion of the court.

This case is before us upon an appeal from a decree of the vice-chancery court at Natchez.

The only point presented by the record for adjudication is, whether the individual property of the appellee, one of the selectmen and an inhabitant of the town of Grand Gulf, is liable to levy for the purpose of satisfying a judgment against the president and selectmen of said town in their corporate capacity.

The seventh section of the act of the legislature, incorporating the town of Grand Gulf, says: "That the said president and selectmen are constituted a body politic and corporate in fact; and in the name of the town of Grand Gulf, and by that name, they and their successors in office shall have perpetual succession, shall have a common seal, may purchase, hold, and convey property; and by the name and style aforesaid, shall be persons capable in law of suing and being sued in all manner of suits or actions, either at law or in equity," — " and may do all other acts incident to bodies corporate."

The tenth section of the act, gives the president and selectmen power to raise a revenue for town purposes, by taxing such property as is liable to taxation under the existing laws of this state, "Provided such tax shall not exceed twenty-five cents on every hundred dollars' worth of such property in any one year." Acts of 1833, 96, 97. These being the only provisions of the charter bearing upon the question under consideration, it will at once appear, that it contains no express provision in regard to the right asserted by the appellant, to resort to the individual property of the inhabitants of the town, for the purpose of discharging her judgment against the corpo-

ration.   Hence we must look alone to the common law for the rules to guide us in our decision.

With respect to private corporations, such as banks or insurance companies, it is conceded, that no individual responsibility attaches to the members for the corporate debts.   "A different rule prevails," say some of the authorities, "with regard to the inhabitants of any district; as counties or towns incorporated by statute, which come under the head of *quasi* corporations; for against them no private action will lie unless given by statute; and if a power to sue them is given by statute, each inhabitant is liable to satisfy the judgment."   Angell & Ames on Corp. 498, 499.   The same rule is more broadly stated by the supreme court of Connecticut, in the case of *Beardsley* v. *Smith*, 16 Conn. R. 368.   The court on that occasion used the following language: "We know, that the relation in which the members of municipal corporations in this State have been supposed to stand in respect to the corporation itself, as well as to its creditors, has elsewhere been considered in some respects peculiar.   We have treated them, for some purposes, as parties to corporate proceedings, and their individuality has not been considered as merged in their corporate connection.   Though corporators, they have been holden to be parties to suits by or against the corporation, and individually liable for its debts." "Such corporations are of a public and political character; they exercise a portion of the governing power of the State. Statutes impose upon them important public duties.   In the performance of these, they must contract debts and liabilities, which can only be discharged by a resort to individuals, either by taxation or execution.   Taxation in most cases can only be the result of the voluntary action of the corporation, dependent upon the contingent will of a majority of the corporators, and upon their tardy and uncertain action.   It affords no security to creditors, because they have no power over it."

The same doctrine, in language equally strong, has been, in repeated decisions, announced by the supreme court of Massachusetts, and it is, perhaps, now the settled law of all the New England States.   In view of the numerous authorities, emanating from judicial tribunals as enlightened as those of the

New England States, thus settling the law, we have been induced to give the question involved in the case before us a much more thorough examination than it otherwise would have received at our hands. This examination has only served to strengthen the opposition which we from the first conceived against the rule, as well as the principles upon which it has been settled by the authorities cited. We submit with all proper deference and respect, that neither position assumed by the court in the case of *Beardsley* v. *Smith* can be sustained by any principle of the common law, in reference to the inhabitants of the town of Grand Gulf. These positions are, first, that the inhabitants of the town are parties to all suits by or against the corporation; and, secondly, the charter authorizing a suit against the corporation, the inhabitants are personally liable to discharge the judgment when obtained.

In regard to the first position, the suit was in this instance against the corporation. The record shows no other defendant. Hence, if the inhabitants were parties to the suit, they became such by operation of law. Before the law will make, or even presume a man to be a defendant to a suit against another, he must be shown to have been a party to the cause of action upon which it is founded. Were the inhabitants of the town of Grand Gulf parties to the cause of action in this instance? and if so, was it their own act, or that of the corporation, that made them such? If of the corporation, had it power to perform the act? The tenth section of the charter already noticed furnishes a conclusive answer to these several inquiries. It prescribes the manner in which, and the extent to which the corporation must act and may go in this respect. The statute prescribing the mode in which an act must be performed, is a negative upon all other modes for performing it. Whence it is manifest that the inhabitants of the town were not parties to the cause of action. They could not, therefore, be parties to the suit, for the plain reason that they had violated no legal duty. A suit is but a remedy given by law to enable a party who has been injured by the act or violation of duty by another, to recover damages equal to the injury or loss sustained. If the duty never existed, it could not be violated; and without

both its existence and violation, there was no ground for a suit against the inhabitants of the corporation.

But there is still another light in which this question may be presented. If the doctrine be true, that the inhabitants of an incorporated town are by operation of law parties to all suits by or against such corporation, then it follows, that however just his claim may be, an inhabitant could not, under any circumstances, either maintain a suit or enforce a judgment against the corporation. The moment he appears as a plaintiff on the record, the law makes him a defendant jointly with the corporation in the same action. And if he should be so fortunate as to escape a plea in abatement, or a demurrer, if the fact appeared of record, and obtain his judgment, his own property would be as much liable as that of any other inhabitant, to satisfy the execution. This shows to what the doctrine must lead, and, consequently, its utter absurdity.

We will now proceed to consider the second question stated in Angell and Ames, in this language, to wit: " If a power to sue the corporation is given by statute, each inhabitant is liable to satisfy the judgment." This doctrine, in certain cases, is unquestionably correct; but it has no application to a corporation like that of the town of Grand Gulf, or the city of Bridgeport, spoken of in *Beardsley* v. *Smith*. The rule is this; that whenever either the common law or a statute requires the inhabitants of a particular district of country, such as a county town or hundred in England, to perform certain duties, and they fail in this respect, in consequence of which a statute authorizes a suit by the party injured against the inhabitants, then the judgment in such case may be wholly satisfied out of the property of any one of said inhabitants. This is all according to reason and the principles of the common law. The duty required was, in the first instance, joint and several. Every inhabitant was bound to aid in its performance. All were implicated in its violation, which occasioned the suit. The judgment, in being also joint and several, only partook of the nature of the cause of action upon which it was founded. This was the operation of judgments recovered under the statute of Winton, till its amendment by the act of 43d Elizabeth,

which required such judgments to be satisfied by a tax levied equally upon the inhabitants of the hundred.

Here, as we humbly conceive, lies the error into which these learned tribunals have fallen, in not properly discriminating between a duty, in the performance of which the law required every man in the particular district to aid, and for a breach of which all were liable, and a mere power delegated to a corporation for certain specified purposes.

The charter, in this instance, only requires the inhabitants of the town to perform such obligations as the corporate authorities may legally impose upon them: The only obligation which could be thus imposed, is the tax provided for in the tenth section. A failure to impose this tax, or a failure to pay it by the inhabitants, does not make them liable to a judgment against the corporation, for the plain reason that it constituted no cause of action in the first instance. A judgment is only the means provided by law to enable the creditor to get that to which he was entitled before judgment. A creditor could not maintain a suit against any or all of the inhabitants, merely because they were liable to pay a certain tax, and had failed to pay it. Upon what principle, then, can he resort to their property, for the purpose of discharging a judgment against the corporation, to which they are not parties, and against whom a recovery could not have been had, even if they had been parties?

But it is said, that the corporation exercised a portion of the governing power of the State, and, therefore, could exercise its discretion in creating liabilities against the inhabitants of the town. It is true, that the corporation is invested with a subordinate political power, but it is only such as is expressly granted by the charter.

To this extent the inhabitants of the town only agreed to submit to the jurisdiction of the corporation, and the additional burdens which it might impose. Thus acting, it is the creature of law, and can never oppress those under its jurisdiction. Without this restraint its power is arbitrary and despotic, and may be used by the corporate authorities for their own selfish purposes.

Davis v. Doe, d. Delpit.

The whole case must at last turn upon the question, whether the corporation in its action must be confined strictly to the grants contained in the charter, or whether it may exercise an unlimited authority over the inhabitants of the town. If we adhere to the first position, the case for the appellant cannot even be made plausible under the charter. The corporation possessed no authority to make the people of the town parties to the cause of action, or to the suit, or to make their property liable to the judgment, except in the shape of a tax.

It makes no difference, that the appellee is one of the selectmen. He is only one of seven, and could not alone either levy or enforce a tax under the charter. If he has failed to perform his duty as a corporator, the law gives a remedy against him as well as the others by *mandamus*, to compel them to levy the tax named. He can only be known in the present controversy as an individual, and his rights as such determined.

There is no judgment in the record from which an appeal could be prosecuted. The case will, therefore, be dismissed.